**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BLACK DIAMOND DEVELOPERS, LP AND** | § | |
| **CCC OPERATIONS, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **HOMEOWNERS' ASSOCIATION OF** | § | |
| **CIMARRON, INC.;** | § | |
| **JOSEPH FELTON PHILLIPS;** | § | |
| **LARRY FAIR;** | § | |
| **KEITH MOORE;** | § | |
| **RICARDO LEE SALINAS;** | § | |
| **RICHARD ROTH;** | § | |
| **CARLOS MARTINEZ;** | § | |
| **SUSAN GALIK;** | § | |
| **PLANNING DEPARTMENT** | § | |
| **OF THE CITY OF MISSION AND** | § | |
| **JOHN AND JANE DOES,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>PLAINTIFFS' ORIGINAL COMPLAINT</u>

TO THE HONORABLE U.S. DISTRICT JUDGE:

COME NOW, BLACK DIAMOND DEVELOPERS, LP ("Black Diamond") AND CCC

OPERATIONS, LLC ("CCC") (hereinafter Black Diamond and CCC are collectively referred to

as "Plaintiffs"), and for cause of action would show as follows:

# I.

## PARTIES

1.   Plaintiff Black Diamond Developers, LP is a Texas limited partnership with its principal place of business located in Mission, Hidalgo County, Texas.

2.   Plaintiff CCC Operations, LLC is a Texas limited liability company with its principal place of business located in Mission, Hidalgo County, Texas.

3.   Defendant Homeowners' Association of Cimarron, Inc. is a Texas corporation with its principal residence located in Mission, Hidalgo County, Texas and can be served by serving its registered agent Sharon Black, at its registered address located at 312 Sabine, Mission, Hidalgo County, Texas 78572, or wherever it may be found.

4.   Defendant Joseph Felton Phillips is an individual residing in Mission, Hidalgo County, Texas and can be served by serving him at his principal place of business located at 109 Rio Grande Drive, Mission, Hidalgo County, Texas 78572, or wherever he may be found.

5.   Defendant Larry Fair is an individual residing in Mission, Hidalgo County, Texas and can be served by serving him at his principal place of business located at 122 Rio Grande Drive, Mission, Hidalgo County, Texas 78572, or wherever he may be found.

6.   Defendant Keith Moore is an individual residing in Mission, Hidalgo County, Texas and can be served by serving him at his principal place of business located at 1207 Cimarron Drive, Mission, Hidalgo County, Texas 78572, or wherever he may be found.

7.   Defendant Ricardo Lee Salinas is an individual residing in Mission, Hidalgo County, Texas and can be served by serving him at his principal place of business located at 2011 N. Conway Avenue, Mission, Hidalgo County, Texas 78572, or wherever he may be found.

8. Defendant Richard Roth is an individual residing in Mission, Hidalgo County, Texas and can be served by serving him at his principal place of business located at 518 Rio Grande Drive, Mission, Hidalgo County, Texas 78572, or wherever he may be found.

9. Defendant Carlos Martinez is an individual residing in Mission, Hidalgo County, Texas and can be served by serving him at his principal place of business located at 1005 Cimarron Drive, Mission, Hidalgo County, Texas 78572, or wherever he may be found.

10. Defendant Susan Galik is an individual residing in Mission, Hidalgo County, Texas and can be served by serving her at her principal place of business located at 408 Rio Grande Drive, Mission, Hidalgo County, Texas 78572, or wherever she may be found.

11. Defendant Planning Department of the City of Mission is a political subdivision of the City of Mission and can be served by serving the Mayor of the City of Mission, Noralinda Gonzalez Garza, at Mission City Hall, 1201 E. 8th Street, Mission, Hidalgo County, Texas 78572, pursuant to Tex. Civ. Prac. & Rem. Code, § 17.024(a)

## II.

## JURISDICTION AND VENUE

12. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because the Plaintiffs have alleged claims against the Defendants under the United States Constitution, 14th Amendment and 42 U.S.C. §§ 1981, 1983, and 1985. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the Defendants reside in the Southern District of Texas and the claims arose in the Southern District of Texas.

# III.

## BACKGROUND FACTS

14. The facts below detail a conspiracy between and among the Defendants to deprive the Plaintiffs of their zoning and development rights in their real property without due process of law. The HOA and certain of its members have conspired and acted individually to interfere with Plaintiffs' prospective business relationships with its club members and with the City of Mission's city council to stop the Plaintiffs from enjoying the use and benefits of their real property. The Plaintiffs own an 18-hole golf course property and wanted to develop a portion of the real property for commercial and mixed use. The Plaintiffs presented their plans to the neighboring HOA prior to applying for the required rezoning with the City of Mission. The HOA and its members knew that the Plaintiffs had the right to seek and obtain this rezoning. The HOA and its members did not want anything other than a golf course on the property for their own reasons of wanting the existing golf course to remain undisturbed. The HOA and its members engaged in a coordinated and sustained effort to block the Plaintiffs from having any consideration of the rezoning through use of unlawful means and enlisted the help of the City of Mission and its representatives in the conspiracy. The Defendants conduct has been successful, denying the Plaintiffs their due process rights and equal protection of the laws and damaging the Plaintiffs' membership base. The Plaintiffs have been forced to file for relief under Chapter 11 of the Bankruptcy Code, and they are now seeking to sell a portion of the property in order to pay creditors. The Defendants' continuing conspiracy and unlawful conduct is now prohibiting the Plaintiffs' sale of its property, as prospective buyers see no hope of obtaining zoning for development.

15. The Cimarron Country Club (the "Club") is a privately-owned business operated by CCC. Black Diamond is the owner of the real property and improvements used by CCC in its

operation of the Club. On August 7, 2020, Black Diamond purchased this property along with other adjacent property and buildings (collectively, the "Subject Property") from The Club at Cimarron, Inc., a Texas corporation (the "Prior Owner"). The Prior Owner had in turn acquired the Subject Property from Collecting Bank, N.A. (a bank in liquidation) on November 7, 1990.

16. CCC and Black Diamond are affiliates by common ownership. Black Diamond's general partner, Black Diamond Developers GP, LLC, is owned by Miguel Kamel Aboumrad and his wife Maria Del Pilar Kamel. Black Diamond's limited partners are Miguel Kamel Aboumrad, Maria Del Pilar Kamel and their sons Joseph Kamel and Daniel Kamel. CCC's members are Miguel Kamel Aboumrad, Joseph Kamel and Daniel Kamel. (Miguel Kamel Aboumrad, Maria Del Pilar Kamel, Joseph Kamel and Daniel Kamel are hereinafter referred to collectively as the "Kamels"). The Kamels are all citizens of the United States.

17. At the time Black Diamond acquired the Subject Property in 2020, the Club (as a business operation) under the Prior Owner had been losing money for many years and was in dire need of repairs and maintenance. Black Diamond purchased the Subject Property with the intent to have CCC revitalize the Club's aging and deteriorating facilities and find the best possible use for the Subject Property to turn it into a successful and economically viable enterprise in the City of Mission. After Black Diamond acquired the Subject Property, material investments were made to revitalize and improve the Subject Property. The Plaintiffs took every effort available to them to continue to operate the Club as a full-service private country club with an 18-hole golf course. The investments and repairs made by the Plaintiffs included, among many others, (i) the complete reconstruction of eight (8) tennis courts, (ii) cleaning of lakes that had been taken over by invasive vegetation, (iii) repairs of pool and gym facilities, (iv) remodeling of racquetball courts and sports facilities, (v) re-building of golf course sand traps, (vi) repair of deteriorating greens on golf course

that were infested with mold, (vii) remodeling of event ballrooms and dining facilities, and (vii) structural repairs of a tee box in the formerly operating golf course that had been eroding into an adjacent lake.

18. Since the Subject Property was annexed to the City of Mission, the formal zoning as recorded in all real property records has been designated and taxed as agricultural open use, and has been reflected in all zoning maps published by the City of Mission as such (and remained as such until March of 2022, when the City of Mission, as part of the City of Mission's collusion with the other Defendants, began illegally revising decades-old zoning designations of the Subject Property).

19. In 2017, the City of Mission confirmed the agricultural zoning of the Subject Property in a letter signed by Jaime Acevedo, the then-serving Director of the Planning Department, which letter expressly states as follows: "The subject site is not zoned Planned Unit Development but rather Agricultural Open Interim." After confirming the zoning of the Subject Property, the letter goes on to say that "the subject site is a component of the overall Cimarron Planned Unit Development" approved in 1984 but was not able to provide any supporting documentation. Even if a master plan for a development project was approved in 1984, or before then, there was no PUD approved or recorded until 1992, after the parties seeking the approved PUD no longer owned any interest in the Subject Property. The City of Mission requires that the parties requesting a PUD own all interests in the property to be encumbered by such PUD. As a matter of law it is not possible for the Subject Property (containing the golf course) to be subject to a PUD controlled by a neighboring HOA with no property or contractual rights to the Subject Property. Further, the City of Mission ordinances state that a PUD is enforceable and valid only after it is recorded in the appropriate county recording office. No PUD related to the HOA or the Subject Property was

recorded (or approved) until 1992, and cannot be enforceable against Black Diamond. As further described below, the City of Mission was aware that no Master Plan or Planned Unit Development was approved or recorded until 1992.

20. In 1992, two years after the Original Developer no longer owned the golf course or any of the Subject Properties, the City of Mission approved, and the HOA recorded with the Hidalgo County Clerk on that same date[1], a Planned Unit Development that governs discrete incremental residential development on the remaining acreage owned by the Original Developer (which excludes all of the Club's golf course) (the "Residential PUD"). The Residential PUD governs the construction of residential homes on specific undeveloped lots expressly listed in the Residential PUD and located on property owned by the Original Developer or the parties requesting the Residential PUD, which do not include any of the Subject Properties or any portion of the golf course located therein. The Residential PUD contains no requirements or obligations on the owners of the neighboring golf course property.

21. In approving the Residential PUD, the City of Mission and the HOA were looking to correct errors of the past to make sure future development of residential homes was conducted subject to the construction guidelines set forth in the Residential PUD. The City of Mission Council itself acknowledged that no Planned Unit Development had ever been approved or recorded prior to such date. As set forth in the minutes of the meeting where the Residential PUD was approved in 1992 (which minutes were provided by the City of Mission), the city council acknowledged that: (i) "The Council was informed that when the Cimarron Development was proposed, it was presented as a Planned Unit Development with varying land uses. However, an

---

[1] See Hidalgo County Official Record, Document Number: 274317, Volume 3299, Page 301).

actual Master Plan with restrictions was never approved or recorded at the County Courthouse. The proposed ordinance was to retro-actively resolve this issue" and (ii) that the Council was briefed by Sergio Zavala, the city planner at that time, over "the item and dilemma of the city not having a recorded Planned Unit Development". To state matters more clearly, the City of Mission acknowledged, in approving the Residential PUD, that they were attempting to retroactively approve a Planned Unit Development, since none had been previously approved.

22. The City of Mission itself admitted that until that point in 1992, there was no Master Plan or Planned Unit Development that had ever been approved or recorded. Therefore, there were no restrictions on the Subject Property, or the owners thereof, related to the Residential PUD at that point. The City of Mission approved Ordinance 1651, which is the Residential PUD governing the remaining residential lots to be developed. At that time, the Subject Property had been sold to the Prior Owner and was no longer owned by the parties requesting the Residential PUD. As a matter of law, the Residential PUD could not encumber the Subject Property.

23. More specifically, no Planned Unit Development that requires the operation of a golf course on the Subject Property exists or was ever approved. Public statements by the mayor of the City of Mission, the former head of the Planning and Zoning Commission and members of the City Council have been that the zoning of the Subject Property is agricultural.

24. After the Plaintiffs acquired the Subject Property, knowing that the Club's operation had been losing money for some time, the Plaintiffs were looking to find ways to best utilize the Subject Property in a manner that would benefit both the Club's business operations as well as the neighboring residential development and the City of Mission. With that goal in mind, the Plaintiffs planned meetings with representatives of the defendant Cimarron Homeowners' Association, Inc. (the "HOA") to discuss potential plans to utilize a portion of the Club's property for new

development, while maintaining operations of a golf course that could favor the Plaintiffs, the HOA, and the City of Mission. On December 22, 2020, representatives of the Plaintiffs met with representatives of the HOA and discussed some preliminary ideas and proposals on how the failing golf course could be saved with some modifications with the goal of avoiding a golf course closure. All plans proposed by the Plaintiffs to the HOA involved maintaining a fully operating golf course, while working with the City of Mission to rezone specific and limited portions of the Subject Property from agricultural use to allow for future residential development and limited commercial development along main roadways and freeways that would generate sufficient cash flows to allow the continued operation of a private golf course. The options and possibilities for such a revitalization project were endless and there was room to work with the HOA and the City of Mission to find a project that would be mutually beneficial for all potentially affected parties and that would avoid the closure of the golf course. Absent such mutual cooperation, the golf course remained a cash draining enterprise that was not, and is not, sustainable as a long-term operation by any owner.

25. Even though the HOA had no legal right in or to the defendant's property and had not contributed any monetary assessments to assist in the maintenance or operation of a golf course since 1990 (after any remaining rights of the HOA and the Original Developer to the Subject Property were severed through a liquidation in bankruptcy), the Plaintiffs acted in good faith by involving both the HOA and the City of Mission in preliminary planning discussions to find the best path forward to save the Club and develop a project that ensured the economic growth and success of the area.

26. Good faith on the part of the Plaintiffs was instead met with a well-planned and coordinated scheme by the HOA, individual members of the HOA, City of Mission officials,

former City of Mission officials and a former employee of the City of Mission to intimidate the Plaintiffs and ensure any future proposed projects would fail (all in an effort to try to force the Plaintiffs to continue to lose money and operate a golf course). The Defendants all entered into an agreement to attempt to destroy the Plaintiffs' Club business and deny the Plaintiffs' their property rights in the Subject Property without due process of law so that the Defendants could force continued operation of the Subject Property as a golf course.

27. The initial attacks against the Plaintiffs and their owners involved direct threats to the safety of the Plaintiffs and their families, intimidation of the Plaintiff's employees, racist attacks against the Plaintiff's owners, and political threats and intimidation. More importantly, such parties engaged in direct attacks against the operations by the Plaintiffs of the Club in an effort to encourage Club members to cancel contractual memberships and prevent future membership drives from being successful, all in an effort to find ways to drain resources from the Plaintiffs and harm the profitability of the Club to keep the Plaintiffs from developing any portion of the Subject Property and force the Plaintiffs to sell the Subject Property. As further described below, the coordinated attack involved harassment of the Plaintiffs and their employees and contractors, attempts by the City of Mission to revise decades-long zoning of the Subject Property without any legal process, political pressure and abuse of the court system. The conduct amounted to a deprivation of the Plaintiffs' procedural and substantive due process rights under the 14th Amendment of the U.S. Constitution and violations of sections 1981, 1983 and 1985 of title 42 of the U.S. Code.

**Joseph Felton Phillips**

28. Joseph Felton Phillips ("Phillips") is a homeowner in the HOA. Phillips is also a former member of the Club. Phillips has led much of the effort in setting up the scheme to deprive

the defendants from their legal use of the Subject Property. Phillips has been a direct link in coordinating efforts with the City of Mission in providing misleading information that has been used as a basis for the deprivation of the Plaintiffs' property rights. Phillips is also a relative of Thomas Phillips, one of the original investors and developers of the Club, before such ownership was lost after a bankruptcy proceeding and subsequent foreclosure and liquidation mandated by the Bankruptcy Court by the debtors against the initial investors and developers.

29. Shortly after the Plaintiffs commenced operations of the Club, Phillips called the Plaintiffs' employees at the Club on a recoded line in which he indicated his displeasure with the Plaintiffs having become the new owners of the Club and the Subject Property and expressed his anger at the new owners being of a Mexican background. Among other attacks and threats, Phillips stated that he would "sue the hell out of these Mexicans … those guys don't know what the hell they're dealing with when they're over this side of the river," referring to the equity owners of the Plaintiffs, all of which are U.S. Citizens and have resided in the City of Mission since 2005. Phillips went on and threatened as follows: "I will come after them with guns" Phillips further commented on social media posts, when discussing a potential redevelopment of the golf course, that "local residents almost certainly would flood Council chambers to block it (dozens of voters have a lot of influence.). Bottom line: It would behoove the new owners to play nicely in the sandbox."

30. Phillips also began posting communications on the "Next Door" App making false and defamatory statements about the Plaintiffs and their owners:

**Marie Gonz**
Cimarron · 4 days ago

J  Joseph Phillips  ·  Cimarron

Cimarron HOA/residents and golf
course management are intrinsically
linked, and have been so since the
beginning (1983.). The original 23
local investors lost the Club and
gave up management of the HOA
following the second major peso
devaluation in the 80s. Still, the Clb
and residents  have always  operated
in tolerance of one another.  The
HOA and residents are not without
power.  If the Club's new owners
play hardball, so can those of us
who live here. (In my case, since
November'83.) The.Club's golf carts
and maintenance carts  typically do
not have license plates and legally
are not allowed on city streets.  Any
sighting can be reported to police.
Any golfer entering a backyard for a
wayward ball is trespassing. And then
there is the matter of whether the
new owners' ultimate plan is to close
all or part of the course and subdivide

Add a comment…


devaluation in the 80s. Still, the Clb and residents  have always  operated in tolerance of one another.  The HOA and residents are not without power.  If the Club's new owners play hardball, so can those of us who live here. (In my case, since November'83.) The.Club's golf carts and maintenance carts  typically do not have license plates and legally are not allowed on city streets.  Any sighting can be reported to police. Any golfer entering a backyard for a wayward ball is trespassing. And then there is the matter of whether the new owners' ultimate plan is to close all or part of the course and subdivide into more lots.  The local residents almost certainly would flood Council chambers to block it (dozens of voters have a lot of influence.). Bottom line:  It would behoove the new owners to play nicely in the sandbox.

1d   Like   Reply                    ❤ 1

📷   Add a comment…

||| ○ ‹

At all times Phillips was acting in his individual capacity and as an agent of the HOA.

**Ricardo Salinas**

31. Ricardo Lee Salinas ("Salinas") is a homeowner and a former member of the Club. Salinas is also the son of Norberto Salinas ("Former Mayor Salinas"), the Mayor of the City of Mission from 1998 to 2018. Salinas is also the ex-husband of Judge Marla Cuellar, the state district court judge who is handling the state court lawsuit filed by the HOA against the Plaintiffs alleging that the Subject Property was somehow a part of the HOA's PUD. In October of 2020, after the Plaintiffs commenced operating the Club, there was an effort to ensure the governing bylaws of the Club's membership were being followed and enforced. In doing so, it was discovered that a number of individuals had been using the Club's facilities without being Club members or without having a membership that granted them access to all facilities. Among them was Salinas' partner, who he referred to as his girlfriend. After Salinas' partner was not admitted to the facilities because she was not part of Salinas' membership (since Salinas' former wife, Judge Martha Cuellar, was still formally listed under his contract with the Club as his spouse), Salinas called the Plaintiffs' employees and stated his displeasure with the new owners and threatened to take efforts to work with people to cancel existing contractual Memberships and damage the Plaintiffs' business and stated the following: "My girlfriend went by there and all... her membership was cancelled, I never sent a resignation deal." "A friend of mine Judge Vasquez is gonna quit with you guys too. It's a f…ing mess Lisa, it's terrible… I'm gonna get as many people to cancel as I can." "I need to leave the f…ing Club. I just hate the new owners. That's it… They don't even have the f…ing courtesy of calling the old members that have been there for years. Because you see... They think that they come from Mexico, and they don't have to do that." "And let me tell you something... My father is gonna run for mayor again … They need the f…ing help. I'm not giving the help for them. It's

just that it's an integral part of our lives and now these idiots are running the f…ing place." "They're not even from here. It's the Club... how did they get their hands on it? That's the f…ing terrible thing about it." Salinas proceeded to make false statements about the Plaintiffs and their owners to members of the Club and encouraged them to terminate their membership in the Club. At all times Salinas was acting in his individual capacity and as an agent of the HOA.

**Larry Fair**

32. Larry Fair ("Fair") is the president of the HOA, has continuously trespassed upon the Club's property and has intervened with the Club's employees or contractors and interfered with their work. In addition, he has actively attempted to scare away contractors and make it as difficult as possible for the Plaintiffs to operate and to harass and intimidate the Plaintiffs.

33. In February of 2021, Larry Fair, the President of the HOA, arranged a Zoom meeting of the HOA members to discuss the Plaintiffs' proposed plans for a partial redevelopment of a portion of the Subject Property. Fair's entire presentation on behalf of the HOA was how the Plaintiffs' development plans would take away the beauty and benefit of the existing golf course from the HOA's members and how the HOA should take whatever action necessary to block any development plans from being approved by the City of Mission. Fair had invited to the meeting Jaime Acevedo, former Director of the Planning Department of the City of Mission, to speak to the HOA's members. In the meeting, Fair recognized that "the golf course is zoned agricultural." Fair told the HOA members in the meeting that any development would cause drainage problems and flooding to the HOA members' homes. Acevedo told the HOA members that it would be possible for a development plan to include protections for drainage.

34. Fair admitted that "so far we haven't seen anything that leads us to believe that the golf course has to stay a golf course in the original documents that were written up." Fair also admitted

that "If and when the time comes and they did not feel it was profitable, that let it be known that they would close the golf course and not continue to lose money. I mean I guess that's every right of every owner that runs a business." Nevertheless, Fair and the HOA members continued in the meeting to insist that the golf course had to remain unchanged and that any change must be blocked by whatever means necessary. After showing the attendees a list of the names of the City Council members and Planning Department employees, Fair encouraged all the individual homeowners to contact the members and employees to block any development. At all times Fair was acting in his individual capacity and as an agent of the HOA.

**Richard Roth**

35. Other Defendants agreed to take other actions to intentionally interfere with the Plaintiffs' business and business relations and to destroy the Plaintiffs' business reputation. Richard Roth, a member of the HOA, followed Plaintiffs' staff members in his car taking pictures of them, trespassed onto the golf course to dump garbage on top of a tee box being repaired, and sent pictures of the trash he dumped to the HOA to be used in a scheme of defamation. Defendant Roth then took to public postings in social media making false statements about the Plaintiffs and their principals, such as:



MYRGV.COM

**Cimarron Country Club to shutter its doors amid lawsuits, 'defamation'**
Owners of Cimarron Country Club have announced that the iconic Mission golf course will per...

😊😢 3                                                    1 Comment  1 Share

👍 Like                    💬 Comment                    ↪ Share

**Rich Roth**
I was a member for over 22 years, even after the Kamal's bought the course. They used the lakes on the course for illegal dumping, they started to require cash for many of their events. It all just started to go downhill month after month. At first it was thought that they were using the course as a money laundering scam, and it well could be. But they have abused the course and country club so much with their incompetent management it will take a lot of work to get it back in shape.

Like  Reply  6w                                                        👍 2

17

fortune from Mexico City will be used in a temper tantrum here in Mission Texas.



MYRGV.COM
**Cimarron Country Club to shutter its doors amid lawsuits, 'defamation'**
Owners of Cimarron Country Club have announced that the iconic Mission golf course will per...

👍 1                                                         1 Comment  2 Shares

👍 Like              💬 Comment              ➦ Share

**Rich Roth**
How one family of incompetent business folks like the Kamal's can bankrupt
businesses time after time culminating in coming close to destroying the community
of Cimarron, it really should be illegal.

Like  **Reply**  6w

Write a comment...                          😀 ☺ 📷 GIF 🙂



**Rich Roth**
August 24 · 🌐

MYRGV.COM
**Cimarron Country Club to shutter its doors amid lawsuits, 'defamation'**
Owners of Cimarron Country Club have announced that the iconic Mission golf course will per...

1 Comment

👍 Like     💬 Comment     ➤ Share

**Rich Roth**
The Kamal family is apparently dead set in destroying the best Country Club in Mission Texas. All for a few dollars, but looking at the track record of this side of the Kamal family they have squandered so much of the family fortune, they are more than willing to hurt the families of the homeowners of Cimarron to desperately for once turn a profit. After the Kamal boys lost numerous businesses here in the area due to incompetent management, they tried it with a golf course. Now in this case their fall back plan,and if the rumors of their deposition are true perhaps their true plan all along was to bankrupt the Country Club and then sell the land as lots for a



**Rich Roth**
September 14 at 4:51 PM · Shared via AddThis · 🌐

Berenice Garcia - and Francisco E. Jimenez - of The Monitor, you have to wonder where the good reporters are when articles like this keep being promoted. The old owners of Cimarron did not fire anyone, they let each one or the employees move on to the next owners. The new Owners both cut the wages of the staff and did fire quite a few people. I got to know a number of them over the years, and they where good people trying to make a living. But no lawsuit started till the new owners started dumping debris, from another company they owned into the lake. like oil tar based asphalt, that stained and polluted our lake. Or their attempt to breakup the golf course, making it a not even a true 18 hole Championship Golf course. But this was all easy to find, if the reporters had even made a few phone calls. If you look at a number of stories that the Monitor has ran in the past, showing the incompetence of the new owners in project after project that failed once again mainly to poor management. The stories are not hard to find since the Monitor ran most of them. Yet the reporters are funning stories of other Golf courses that are having to stop taking new members, because they have maxed out, yet the new owners are claiming that the Golf Business has dried up, come on reporters ask the tough questions. Go ask the County inspectors about polluting our wetlands of our lakes and the surrounding flood plains. Of course that would take a few more phone calls. Or the running of other businesses out of the Cimarron club house. If one was a suspicious person one could think of money laundering actions being done at the club, it just adds to the fact when you look at how many events at the club were cash only, no credit cards allowed.





**Rich Roth**
September 14 at 3:19 PM · Shared via AddThis · 🌐

···

And Cimarron is saying they could not get enough business. Perhaps it is incompetent management, the kind that takes the City of Mercedes for millions in a project that never got off the ground, or another one proposed for the City of McAllen, that never got past using the same project drawings and mock up they used in Mercedes. or their Europa restaurant and Blu Lanes bowling alley that opened for less than a month. So Mission City council has dealt with these incompetent's before. They have taken city after city along the valley always complaining that it was the fault of someone else as they destroyed lives and businesses. Why do we continue to let this happen, every one we talk to warns about doing business with them, yet they con another city or developers out of their hard earned money. Please do not let them destroy Cimarron as well. Our beautiful lakes and Country Club are still there and under proper management will grow back to the beautiful Championship Golf Course it was. The community will get behind any effort to bring back Cimarron to it past greatness.



MYRGV.COM



**Rich Roth**
September 14 at 8:05 AM · 🌐

···

Golf memberships are skyrocketing around the USA as COVID scares decrease. But still Cimarron Closed due to lack of business, it makes no sense. I was a member for over 22 years, and the golf course was the reason I bought my home down here in Mission Tx. When I talk to old timers here in the Valley, they said Cimarron was built in part because the McAllen Country Club did not admit many Hispanic Members back then. I moved down here to the Valley full time from Washington DC when my Mother in law was in her 90"s and had medical conditions. She wanted to be around her friends, as she was till she died at 103. She loved to sit out on her deck and watch the golfers. With all the memberships taken up at the nearby golf courses, it is hoped that some one will take an interest is taking over the best Golf Course in the Valley.



MYRGV.COM
McAllen golf course pauses new memberships

Roth made these social media posts on August 23, 24 and September 14, 2021. At all times Roth was acting in his individual capacity and as an agent of the HOA.

**Susan Galik**

36. Another member of the HOA, Susan Galik, was furious enough at the prospect of having the golf course redeveloped that she made outright threats before engaging in her own pattern of intentional interference with the Plaintiffs' rights and business relations and disparagement of Plaintiffs' business reputation. She wrote to the Plaintiffs:

**From:** JOHN GALIK <jjgalik@sbcglobal.net>
**Sent:** Saturday, August 13, 2022 12:58 PM
**To:** Member Relations <member.relations@cimarroncountryclub.com>
**Subject:** Re: Response to Members' Questions Regarding the Golf Course

It's pretty shitty of you golf course owners to come in and disregard real live people already living at Cimarron. We have home values and views to consider. I understand you were offered twice what you paid for Cimarron and refused the offer. That was a big mistake on your part. Our Homeowners association has plenty of money and plenty of influential and wealthy people belonging to it and we'll fight forever. This isn't Mexico where wealthy people can do what they please. I consider your actions evil. Real people with investments in our homes live here. It is horrifying to read of your plans. You could have had a great golf course with plenty of members if you had chosen that route instead of destroying a once lovely course

Sincerely, Susan Galik
Sent from my iPhone

Defendant Galik began making false statements to members of the Club and members of the Mission community about the Plaintiffs and their business operations, including perpetrating a false rumor that the Plaintiffs were members of a drug cartel and were money launderers. At all times Galik was acting in her individual capacity and as an agent of the HOA.

**Carlos Martinez**

37. Defendant Carlos Martinez made false statements to third parties, including but not limited to Plaintiffs' staff members, that Plaintiffs were not the real owners of Cimarron Country Club, but merely "front men" for Mexican billionaire Carlos Slim, who was the real owner. Defendant Martinez also made a false statement to homeowners in the Cimarron community that:

The new owners of Cimarron, they are known for going bankrupt with the Blu Lanes restaurant and there was another Sushi-Itto restaurant. I mean, they have had about 3 business and they have going bankrupt and I don't know where they got the money to buy Cimarron.

23

Defendant Martinez continued making similar false and defamatory statements to members of the Mission community to defame the Plaintiffs, damages their business, all in the concerted effort to stop the Plaintiffs from any redevelopment of the golf course property. At all times Martinez was acting in his individual capacity and as an agent of the HOA.

**Planning Department of City of Mission, HOA, and Individual Defendants Conspire**

38. On information and belief, Fair, Phillips, Acevedo and others acting in concert with them went to the City of Mission and told them they needed to be able to stop any development plans of the Plaintiffs before any hearing could be obtained. As a result of political wrangling, the City of Mission attempted to change the zoning of the Subject Property without hearing or due process in an attempt to appease the HOA and their affiliated political donors. The HOA provided a new zoning letter provided by the Planning Department of the City of Mission (hereinafter "City of Mission") on or about July 2021 which reflects a change by the City of Mission in zoning designation of the Subject Properties (the "Revised Zoning Letter"). In providing supporting documentation for the Revised Zoning Letter, the City of Mission provided copies of virtually the exact same documents that the HOA claimed to be relying on, all of which are inconsistent with the historical zoning of the Subject Properties. This further amplifies the fact that the Defendants and their respective representatives and consultants (including Jaime Acevedo, as further detailed below) have been exerting political pressure on, and directly conspiring and coordinating with, the City of Mission and its officers, employees and agents to change the zoning of the Subject Properties without due process of law or just compensation in an attempt to force the Plaintiffs to maintain and operate a cash-draining golf course for the benefit of the Defendants and the City of Mission without regard to the Plaintiffs' own rights to the Subject Property or the economic and financial implications on the Plaintiffs. The Defendants are further engaged in a well-coordinated

attempt to try to preclude the Plaintiffs from seeking use of their property in accordance with law and existing zoning restrictions or flexibility.

39. The City of Mission held no hearing to change the zoning of the Subject Property from agricultural open use prior to attempting to issue a new zoning of the Subject Properties pursuant to the Revised Zoning Letter (and related attempts to tamper with officially published zoning maps). Even if the Subject Property is designated as PUD, that would not change the agricultural use and would not mean the Plaintiffs are subject to the Residential PUD. The intent is to force the Plaintiffs to be subject to a PUD governed by the Cimarron HOA that was approved and recorded two years after the Subject Property was no longer owned by the Cimarron HOA or any of their affiliated parties. City ordinances state that a PUD can be approved only after a formal filing is made by the owners of <u>all</u> the interests in the property. As a matter of law, the Subject Property cannot be subject to the Cimarron HOA's Residential PUD because the parties requesting the PUD did not own the Subject Property they claim is subject to it. Furthermore, the Residential PUD does not govern any operation of a golf course or require that a golf course be operated by any owner of the Subject Property. Other than discrete references to a golf course that is in existence and had previously been constructed, the Residential PUD provides limitations only on how certain residential lots will be constructed (including related residential construction set-backs) on the property owned by the requesting parties. The Residential PUD refers to a golf course that has been constructed, but that golf course is not governed by the Residential PUD and as a matter of law cannot be governed by the Residential PUD.

40. The City of Mission Code of Ordinances states that the applicants of a planned unit development must prove that they "are in fact all the owners or have control of all outstanding

interests of the land and structures thereon"[2]. The parties setting up the Residential PUD did not own any interest in the golf course and there is no language in the Residential PUD requiring an operation of a golf course on any Club Property.

41. The Subject Properties are not subject to the Residential PUD (as defined above). This was further confirmed by Jaime Acevedo in his capacity as Planning Director for the City of Mission in the 2017 zoning letter.

42. On May 26, 2022, the HOA and certain of its members and officers organized an open forum with then-elected officials of the City of Mission as well as other candidates who were vying for public office at that time (the "Public Forum"). Phillips was the main party leading and moderating this meeting. At the meeting the HOA, led by Phillips, disclosed its efforts to use the legal system to obtain private confidential information from the defendants and to pressure officials to commit to disregarding the due process of law to ensure the Plaintiffs would not pursue any legally available use of the Subject Property. At the meeting, the Defendants further disclosed details of the coordinated efforts they had taken to ensure the Plaintiffs were deprived from their property rights. Further, the HOA, its consultants (including Jaime Acevedo) and city officials all acknowledged that the zoning of the Subject Property is agricultural open space, and that they would oppose any efforts to change that zoning. Not only did the speakers at Public Forum, which included now Mayor Noralinda Gonzalez Garza and then Mayor Dr. Armando O'Cana, commit to try to stop the Plaintiffs' legally permissible efforts to save the Club, but the City of Mission is now claiming new zoning of the Subject Properties (inconsistent with their own public statements

---

[2] See Section 98-189 of Article IV (Planned Unit Development) of the City of Mission Code of Ordinances.

and 40 years of zoning designation) to take away Plaintiffs' property rights without due process of law.

43. Jaime Acevedo was hired as a consultant for the litigation by the HOA and its members and officers. He has been coordinating plans and discussions with the City of Mission and its officers and employees and the other Defendants to ensure there is a coordinated attempt to re-zone the Subject Property without due process of law in an effort to set up a scheme to deprive the Plaintiffs of their property rights and any processes available them under applicable law to use the Subject Property and to seek any rezoning under city processes. Jaime Acevedo has also been instrumental in coordinating leaks by the City of Mission of information requests made by Plaintiffs (and related plans and proposal provided by the Plaintiffs to City officials) to the HOA, all as part of the coordinated efforts to assist the HOA, Fair and Moore in utilizing the courts and legal system to deprive the Plaintiffs of their rights in the Subject Property.

44. At the Public Forum, City of Mission Councilwoman Jessica Ortega stated that Jaime Acevedo is her neighbor and that he was Susie de Luna's boss for many years. Susie de Luna is currently the Planning Director for the City of Mission and took over that position from Jaime Acevedo. Councilwoman Ortega and other speakers at the Public Forum expressly indicated that Jaime Acevedo had been actively involved in discussions with them and coordinating efforts by the Defendants to work with the City of Mission in providing and generating documentation (even if inconsistent with documents previously signed by Jaime Acevedo) in an effort to take away property rights from the Plaintiffs without due process. Mayor Noralinda Gonzalez Garza (who was then Councilwoman Gonzalez) also stated that she had actively been discussing these matters with Jaime Acevedo, the HOA's consultant, and that she would personally take efforts to prevent the Plaintiffs from pursuing their legally permissible use of the Subject Property. Ortega has used

her position as a councilmember of the City of Mission to cause the City of Mission to unlawfully rezone Plaintiffs' property without due process of law and deny Plaintiffs any redevelopment rights without due process of law.

45. Ruben Plata, a city councilman for the City of Mission, agreed to conspire with the HOA, other councilmembers of the City of Mission, and the other Defendants, in denying the Plaintiffs their due process rights by refusing to even consider any redevelopment plans for the Subject Property. He stated in a public forum that the Subject Property was a marketing jewel for the City of Mission as a golf course and it should not be used for anything other than a golf course.

46. The Defendants know that their actions and conduct are unlawful, because they know the Subject Property is not a part of the HOA Residential PUD and is not restricted to use only as a golf course. Fair, the president of the HOA, stated at the HOA Zoom meeting that he knew the "golf course is zoned agricultural." "We have looked into that. We have been reviewing.... so far we haven't seen anything that leads us to believe that the golf course has to stay a golf course in the original documents that were written up." "If and when the time comes and they did not feel it was profitable, that let it be known that [the Owners] would close the golf course and not continue to lose money. I mean I guess that's every right of every owner that runs a business [emphasis added]."

## IV.

## CLAIMS AND CAUSES OF ACTION

### A. Violations of 42 U.S.C. § 1983 and 14th Amendment, U.S. Constitution

47. The Defendants, under color of Texas statutes, City of Mission ordinances, regulations, customs, or usage, have subjected, or caused to be subjected, the Plaintiffs to the deprivation of their rights, privileges, or immunities secured by the 14th Amendment to the United States

Constitution, namely deprivation of their property rights without due process of law, both substantive and procedural. As specifically alleged above in paragraphs 26 - 46, the Defendants engaged in the systematic effort to deny the Plaintiffs' zoning rights in the Subject Property by their unlawful scheme to claim that Subject Property is subject to the Cimarron Residential PUD and can only be used as a golf course. The Defendants have manipulated zoning maps, development agreements, and other zoning documents and under color of law, namely the City of Mission ordinances and planning department declarations, that the Subject Property does not enjoy any property rights except as a golf course. The Defendants have used the court system to perpetrate this unlawful scheme. The Defendants' conduct has been the direct and proximate cause of actual damages to the Plaintiffs in the form of a loss of value to the Property, which damages the Plaintiffs now seek. Further, the Defendants' conduct was committed with malice, wanton conduct, or with the conscious indifference to the rights of the Plaintiffs. Therefore the Plaintiffs are entitled to an award of exemplary damages, which they now seek.

**B. <u>Violations of 42 U.S.C. § 1981.</u>**

48. The Defendants have, under color of Texas law, impaired the Plaintiffs' right to make and enforce contracts, including the making, performance, and modification of contractual and property rights arising from contractual rights, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. The Defendants have, under color of Texas law, impaired the Plaintiffs' the full and equal benefit of all laws and proceedings for the security of their property. Specifically, the Plaintiffs enjoy full property rights under the deed to the Subject Property, including use of the Subject Property as outlined in paragraphs 15 - 25, as approved by city zoning, as mixed-use developments and uses other than a golf course. The Plaintiffs have the right to modify the use of the Subject Property, subject to city ordinances and state law. The

Defendants have unlawfully, but under the color of state and local laws, denied the Plaintiffs those rights and denied the Plaintiffs the full and equal benefit of the laws and proceedings needed for the use and modification of the property rights in the Subject Property through their coordinated conduct outlined in paragraphs 26 - 46. The Defendants' conduct has been the direct and proximate cause of damages to the Plaintiffs in the form of a loss of value to the Property, which damages the Plaintiffs now seek. Further, the Defendants' conduct was committed with malice, wanton conduct, or with the conscious indifference to the rights of the Plaintiffs. Therefore the Plaintiffs are entitled to an award of exemplary damages, which they now seek.

### C.  **Conspiracy to Interfere with Civil Rights in Violation of 42 U.S.C. § 1985.**

49. The Defendants have conspired for the purpose of depriving, directly or indirectly, the Plaintiffs of equal protection of the laws and equal privileges and immunities under the laws by agreeing to unlawfully deprive the Plaintiffs of property rights in the Subject Property. The Defendants' conduct constituting the conspiracy is outlined in paragraphs 26 – 46. The Defendant HOA and its Defendant members more specifically conspired for the purpose of preventing or hindering the authorities of the City of Mission from giving or securing to the Plaintiffs the equal protection of the laws with respect to the zoning of their property, as outlined in paragraphs 38 – 46. Each of the Defendants acted in furtherance of the object of the conspiracy, which was the deprivation of the Plaintiffs' zoning and development rights in the Subject Property. The conduct of each of the defendants in furtherance of the conspiracy is described in the paragraphs above as follows:

| | |
|---|---|
| HOA: | Paragraphs 26, 27, 38, 42, 43, and 44 |
| City of Mission: | Paragraphs 38, 39, 42, 44, and 45 |
| Phillips: | Paragraphs 28, 29, 30, 38, and 42 |
| Fair: | Paragraphs 32, 33, 34, 38, 43, and 46 |
| Salinas: | Paragraph 31 |
| Roth: | Paragraph 35 |

Galik:      Paragraph 36
Martinez:  Paragraph 37
Moore:    43

50. The Defendants' conduct and actions in furtherance of the object of the conspiracy have been the direct and proximate cause of damages and injury to the Plaintiffs in the form of a loss of value to the Property, which damages the Plaintiffs now seek. Further, the Defendants' conduct was committed with malice, wanton conduct, or with the conscious indifference to the rights of the Plaintiffs. Therefore the Plaintiffs are entitled to an award of exemplary damages, which they now seek.

**D.** **Tortious Interference with Existing and Prospective Business Relations and Conspiracy.**

51. Defendants HOA, Phillips, Fair, Keith Moore, Salinas, Roth, Martinez and Galik (the "Interfering Defendants") have intentionally interfered with the existing and prospective business relations of the Plaintiffs. The Interfering Defendants made false and defamatory statements to members of the Club, knowing the members were in a relationship with the Plaintiffs, to cause the members to terminate their membership with the Plaintiffs' Club and harm the Plaintiffs' revenue stream. The Interfering Defendants made false and defamatory statements in public by social media posts and by emails to keep members of the public from joining the Plaintiffs' Club. The Interfering Defendants made false and defamatory statements to officers, employees and agents of the City of Mission, knowing that the Plaintiffs had a prospective business relationship with these persons for zoning and development of the Subject Property, to cause the City of Mission to refuse any zoning and development changes and to cause the City of Mission to actively deprive the Plaintiffs of rights in the Subject Property. (See paragraphs 30 – 37). There was a reasonable probability that the Plaintiffs would have entered a relationship with residents of the City of Mission for club membership and with the City of Mission for rezoning and redevelopment

approvals. The Interfering Defendants did the acts with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially certain to occur as a result of their conduct. The Interfering Defendants conspired to interfere with these relations and took actions in furtherance of the object of that conspiracy. The Interfering Defendants' conduct was the direct and proximate cause of actual damages to the Plaintiffs in the form of lost membership revenue and loss of value of the Property, which damages the Plaintiffs now seek. Further, the Interfering Defendants' conduct was committed with malice, wanton conduct, or with the conscious indifference to the rights of the Plaintiffs. Therefore the Plaintiffs are entitled to an award of exemplary damages, which they now seek.

E. **Business Disparagement.**

52. The Interfering Defendants disparaged the Plaintiffs business reputation by publishing disparaging words about the Plaintiffs that were false and doing so with malice and without privilege. *Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex.1987); *Playboy Enterprises, Inc. v. Ed. Caballero, S.A. de C.V.*, 202 S.W.3d 250, 267 (Tex. App. – Corpus Christi 2006, rev. denied). These false statements included statements that the Plaintiffs' owners were Mexicans and not citizens of the United States (paragraph 29, 31, 36, and 37), that the Plaintiffs were a part of a drug cartel and money launderers (paragraph 35 and 36), that the Plaintiffs were business failures who drove all of their businesses into bankruptcy (paragraph 35 and 37), that the Plaintiffs' development plans would cause flooding on the surrounding property (paragraph ), and that the Plaintiffs were engaging in unlawful dumping of hazardous waste and causing environmental damage to the property and the surrounding property (paragraph 35). The Interfering Defendants' conduct was the direct and proximate cause of damages, including but not limited to special damages, which damages the Plaintiffs now seek. Further, the Interfering Defendants' conduct was

committed with malice, wanton conduct, or with the conscious indifference to the rights of the Plaintiffs. Therefore the Plaintiffs are entitled to an award of exemplary damages, which they now seek.

**F.  Trespass to Property and Request for Temporary and Permanent Injunction.**

53. Defendants HOA (by and through its members and agents), Phillips, Fair, Salinas, and Roth (the "Trespassing Defendants") have trespassed on the Plaintiffs' Property by their unauthorized entry upon the Plaintiffs' land and their actions in causing others to enter upon the land without authority. *Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015). *Barnes v. Mathis*, 353 S.W.3d 760, 763 (Tex. 2011). These Trespassing Defendants entered or caused others to enter the property without Plaintiffs' authority or consent to place trash on the Plaintiffs' land causing the Plaintiffs damages in the form of cleaning and remediating the land. These Trespassing Defendants also entered or caused others to enter the property without Plaintiffs' authority or consent to cut grass growing on the property. These trespasses caused temporary and permanent damages to the property, which damages the Plaintiffs now seek to recover.

54. The Plaintiffs seek a temporary and permanent injunction against these Trespassing Defendants to enjoin them from entering or causing others to enter the Plaintiffs' property without authority or consent.

**G.  Attorney's Fees.**

55. The Plaintiffs have been forced to employ attorneys to prosecute their claims under 42 U.S.C. §§ 1981, 1983, and 1985 and are entitled to a recovery of their reasonable and necessary attorney's fees for prosecution of those claims.

# V.

## JURY DEMAND

56. The Plaintiffs hereby demand a trial by jury on all claims and causes of action in this case.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs, BLACK DIAMOND DEVELOPERS, LP AND CCC OPERATIONS, LLC ("CCC"), pray that after trial to a jury, this Court enter and award a judgment over and against the Defendants, jointly and severally, for:

1. Actual damages;

2. Special damages;

3. Exemplary damages;

4. Reasonable and necessary attorney's fees; and

5. Costs of court.

Respectfully submitted,

**THE PROBUS LAW FIRM**

By:    /s/ Matthew B. Probus
            **Matthew B. Probus**
            State Bar No. 16341200
            Federal ID 10915
            matthewprobus@theprobuslawfirm.com

            10497 Town & Country Way, Suite 930
            Houston, Texas 77024
            (713) 258-2700 (Telephone)
            (713) 258-2701 (Facsimile)

            *ATTORNEYS FOR THE PLAINTIFFS,*
            *BLACK DIAMOND DEVELOPERS, LP*
            *AND CCC OPERATIONS, LLC*