United States District Court
Southern District of Texas
**ENTERED**
March 28, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BLACK DIAMOND DEVELOPERS, LP, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:23-CV-00143 |
| HOMEOWNERS' ASSOCIATION OF CIMARRON, INC., *et al.*, | § § § | |
| Defendants. | § § | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS**

Now before the Court are Defendants Homeowners' Association of Cimarron, Inc., Joseph Felton Phillips, Larry Fair, Ricardo Lee Salinas, Richard Roth, Carlos Martinez, Susan Galik, and the City of Mission, Texas's Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure. (Dkt. Nos. 41, 49). After considering the Motions, the responsive briefing, (Dkt. Nos. 27, 29, 31, 35, 37, 38, 40, 42), and the applicable law, the Court is of the opinion that Defendants' Motions should be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

Plaintiffs filed suit in federal court on March 13, 2023, to recover for alleged deprivations of their Fourteenth Amendment right to due process and equal protection of the laws pursuant to 42 U.S.C. §§ 1981, 1983, and 1985. (Dkt. No. 28, 30-31). Plaintiffs also bring state causes of action for tortious interference with existing and prospective business relations, business disparagement, and trespass to property. (Dkt. No. 28, 31-37). The case was originally filed in the Houston Division of the Southern District of Texas (Dkt. No. 1) before it was transferred to the McAllen Division of the Southern District of Texas on April 26, 2023, (Dkt. No. 23).

All Defendants in the case filed separate Motions to Dismiss and referenced Plaintiff's Original Complaint. Plaintiff then amended its complaint but did not substantively change the majority of the complaint. (Dkt. No. 28). Each Defendant has since re-urged the Court to consider its Motion to Dismiss against the First Amended Complaint. (Dkt. Nos. 41, 49). Plaintiff has also dismissed Keith Moore and the Planning Department of the City of Mission. (Dkt. Nos. 30, 32).

## II.    OVERVIEW OF THE PLAINTIFFS' COMPLAINT

Plaintiff Black Diamond Developers, LP purchased the Cimarron Country Club ("the Subject Property") on August 7, 2020. (Dkt. No. 28 at 5). Plaintiffs claim they planned to develop a portion of the Subject Property for commercial and mixed use, investing a substantial amount of money revitalizing the property in the process. (*Id.* at 4-6). According to Plaintiffs, this was feasible because "the formal zoning as recorded in all real property records has been designated and taxed as agricultural open use[.]" (*Id.* at 6). Plaintiffs shared these development plans with Defendants at a meeting in December 2020. (*Id.* at 9). Shortly after, Plaintiffs allege Defendants unleashed a racially motivated campaign of harassment designed to stop any plans to change the use of the Subject Property. According to Plaintiffs, Defendants' tactics culminated with the unlawful issuance of a zoning opinion letter in July 2021 by the Planning Department of the City of Mission. (*Id.* at 26). Plaintiffs claim this zoning letter changed the zoning of the Subject Property from agricultural open use to planned unit development. (*Id.*)

Plaintiffs' complaint contains numerous allegations against each defendant, which are summarized by the Court below.

### A.  The City of Mission

Plaintiffs allege the City of Mission ("the City") conspired with the Homeowners' Association of Cimarron, Inc. ("HOA"), Larry Fair, Ricardo Salinas, Richard Roth, Carlos Martinez, and Susan Galik ("Individual Defendants") to amend the zoning designation of land they

purchased in 2020 without due process. (Dkt. No. 28 at 26). In 2017, the City described the zoning

of the Subject Property in a letter signed by the then-serving Director of the Planning Department

as "not zoned Planned Unit Development but rather Agricultural Open Interim." (*Id.* at 7).

However, the letter also states that the Subject Property is "a component of the overall Cimarron

Planned Unit Development." (*Id.*) In 2021, Plaintiffs allege that the City issued a "new zoning

letter" purporting to change the zoning of the Subject Property "without hearing or due process."

(*Id.* at 26). According to Plaintiffs, the 2021 zoning letter was the result of a racially motivated

conspiracy between the Individual Defendants, the HOA, and the City to deprive Plaintiffs of their

constitutionally protected rights. (*Id.* at 26-30). Plaintiffs contend that the letters effectuated an

unlawful change in their zoning designation without "notice or hearing or due process of any kind"

in violation of 42 U.S.C. §§ 1981, 1983, and 1985. (*Id.* at 30-34).

### B.  Joseph Felton Phillips

Plaintiffs allege Defendant Joseph Felton Phillips, a homeowner and member of the HOA,

orchestrated a conspiracy among the Defendants to deprive Plaintiffs of their constitutionally

protected rights in the Subject Property. (Dkt. No. 28 at 11). Plaintiffs contend Mr. Phillips was

displeased by the new owners "being of Mexican background." (*Id.* at 11). According to Plaintiffs,

Mr. Phillips was the "main party leading and moderating" a public forum with then-elected City

of Mission officials at which details were disclosed of "coordinated efforts [Defendants] had taken

to ensure the Plaintiffs were deprived of their property rights." (*Id.* at 28). Plaintiffs argue Mr.

Phillip's acted as in an individual capacity and as an "agent" of the HOA to pressure the City to

unlawfully change Plaintiffs zoning in violation of 42 U.S.C. §§ 1981, 1983, and 1985. (*Id.* at 30-

34).

Plaintiffs further allege Mr. Phillips tortiously interfered with existing and prospective

business relationships, disparaged Plaintiffs' business, and committed trespass to property. (*Id.* at

34-37). To support these claims, Plaintiffs contend that Mr. Phillips posted on the "NextDoor" app encouraging Cimarron residents to call the police on golf carts using public roadways and to disallow golfers to enter yards to retrieve errant balls. (*Id.* at 12-14). Further, Mr. Phillips reportedly stated "local residents almost certainly would flood Council chambers to block [the subdivision plans]." (*Id.* at 12).

### C.  Ricardo Salinas

Plaintiffs allege Defendant Ricardo Salinas is a homeowner and member of the HOA. (Dkt. No. 28 at 15). According to Plaintiffs, Mr. Salinas called the Cimarron Country Club after his girlfriend was denied access to state his displeasure with the new ownership. (*Id.* at 15). Mr. Salinas allegedly threatened to "get as many people to cancel [their club memberships] as I can. (*Id.* at 15). Plaintiffs contend Mr. Salinas followed through on these threats and encouraged members of the Cimarron Country Club to cancel their memberships. (*Id.* at 16). Plaintiffs further allege that Mr. Salinas stated, "They're not even from here. . . . That's the f…ing terrible thing about it." (*Id.*). Plaintiffs assert this conduct was part of a racially motivated conspiracy to deny Plaintiffs their constitutional rights in violation of 42 U.S.C. §§ 1981, 1983, 1985. Further Plaintiffs argue Mr. Salinas's conduct constituted tortious interference, business disparagement, and trespass to property.

### D.  Larry Fair

According to Plaintiffs, Larry Fair is the president of the HOA. (Dkt. No. 28 at 16). In 2021, Plaintiffs allege Mr. Fair organized a Zoom meeting of HOA members to discuss "how the HOA should take whatever action necessary to block any development plans [of the Subject Property] from being approved by the City." (*Id.*). At this same meeting, Plaintiffs claim Mr. Fair told the Individual Defendants to "take any action" they could with the City to "deprive Plaintiffs of any zoning rights they may possess to develop or use the Subject Property for any use other

than as a golf course." (*Id*. at 17). Plaintiffs assert Mr. Fair also appeared before City Council Members, acting on behalf of the HOA, to "stop Plaintiffs from enjoying their rights in the Subject Property." (*Id*.). Plaintiffs contend this conduct was part of the conspiracy to deny Plaintiffs their constitutional rights in violation of 42 U.S.C. §§ 1981, 1983, 1985. Further Plaintiffs argue Mr. Fair's conduct constituted tortious interference and trespass to property.

### E. Richard Roth

Plaintiffs allege Richard Roth is a homeowner in and member of the HOA. (Dkt. No. 28 at 18). Plaintiffs claim Mr. Roth harassed Plaintiffs' employees, trespassed on Plaintiffs' property to dump garbage, and defamed Plaintiffs in social media posts. (*Id.*). The social media posts, made in the Summer of 2022, contain statements that Plaintiffs are using the club to launder money and were incompetent in running the club. (*Id*. at 19-24). Plaintiffs claim that Mr. Roth was at all times "acting in his individual capacity and as an agent of the HOA." (*Id*. at 24). Plaintiffs contend this conduct was part of the conspiracy to deny Plaintiffs their constitutional rights in violation of 42 U.S.C. §§ 1981, 1983, 1985. Further Plaintiffs argue Mr. Roth's conduct constituted tortious interference, business disparagement, and trespass to property.

### F. Susan Galik

Plaintiffs claim Susan Galik is a member of the HOA. (Dkt. No. 28 at 24). According to Plaintiffs, Ms. Galik "was furious enough at the prospect of having the golf course redeveloped that she made outright threats before engaging in her own pattern of intentional interference with the Plaintiffs' rights and business relations and disparagement of Plaintiffs' business reputation." (*Id.*). Further, Plaintiffs allege Ms. Galik perpetuated rumors that Plainitffs were members of a drug cartel and were money launderers. (*Id*. at 25). Plaintiffs contend this conduct was part of the conspiracy to deny Plaintiffs their constitutional rights in violation of 42 U.S.C. §§ 1981, 1983,

1985. Further Plaintiffs argue Ms. Galik's conduct constituted tortious interference and business disparagement.

### G. Carlos Martinez

Plaintiffs allege Carlos Martinez made false statements to third parties that Plaintiffs were "'front men' for Mexican billionaire Carlos Slim." (Dkt. No. 28 at 25). Additionally, Plaintiffs claim Mr. Martinez made other false and defamatory statements to members of the Mission community "in a concerted effort to stop the Plaintiffs from any redevelopment of the golf course property." (*Id.* at 26).[1] Plaintiffs contend this conduct was part of the conspiracy to deny Plaintiffs their constitutional rights in violation of 42 U.S.C. §§ 1981, 1983, 1985. Further Plaintiffs argue Mr. Martinez's conduct constituted tortious interference and business disparagement.

### III. DISCUSSION

### A. *Legal Standard*

"Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's 'failure to state a claim upon which relief can be granted,'" and is read in conjunction with the federal pleading standard. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting FED. R. CIV. P. 12(b)(6)). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] *Univ. Baptist Church of Fort Worth v. York Risk Servs. Grp. Inc.*, 776 F.App'x 863, 864 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The

---

[1] Plaintiffs also allege Mr. Martinez "was acting in his individual capacity and as an agent of the HOA" but do not otherwise contend that he was a member of the HOA. (Dkt. No. 28 at 26).

[2] Plaintiff states that this Court cannot dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." (Dkt. No. 8 at ¶ 2.1) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This language from *Conley* "earned its retirement" in 2007. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

plausibility standard does not require detailed factual allegations, but a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *accord Iqbal*, 556 U.S. at 678. If the allegations only allow the court to infer the "mere possibility of misconduct," then the complaint has alleged, but not shown, that the plaintiff is entitled to relief. *Univ. Baptist Church of Fort Worth*, 776 F.App'x at 865. The Court views the factual allegations "in the light most favorable to the plaintiff." *Chaudhary v. Arthur J. Gallagher & Co.*, 832 F.App'x 829, 832 (5th Cir. 2020). Under Rule 12(b)(6), claims may be dismissed due to a "a dispositive issue of law" or "if the complaint does not contain sufficient factual matter, accepted as true,[3] to 'state a claim to relief that is plausible on its face.'" *Inclusive Cmtys. Project*, 920 F.3d at 899 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Iqbal*, 556 U.S. at 678).

## IV. ANALYSIS

### A. Dismissal of the Planning Department of the City of Mission and Keith Moore

On May 5th, 2023, Plaintiffs filed "Plaintiffs' Stipulation of Dismissal of Defendant Planning Department of the City of Mission, Texas." (Dkt. No. 30). Plaintiffs also filed "Plaintiffs' Stipulation of Dismissal of Defendant Keith Moore." (Dkt. No. 32). These stipulations were both pursuant to Federal Rule of Civil Procedure 41 (a)(1)(A)(i). The effect of a Rule 41(a)(1) dismissal results in the "immediate termination of the suit," which puts the plaintiff in a "legal position as if he had never brought the suit." *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 719 (5th Cir. 2010). The dismissal is without prejudice, "unless notice or stipulation states otherwise." FED. R. CIV. P. 41(a)(1)(B). These stipulations terminated Defendants the Planning Department of the City of Mission and Keith Moore as parties to this suit. Thus, Defendants' Motions to Dismiss for Failure

---

[3] Legal conclusions in the Complaint do not need to be accepted as true. *University Baptist Church of Fort Worth*, 776 F.App'x at 865; *Iqbal*, 556 U.S. at 678.

to State a Claim as to Defendants the Planning Department of the City of Mission, Texas and Keith Moore are **DENIED AS MOOT**.

### B. 42 U.S.C. §§ 1981, 1983, and 1985 Statute of Limitations

Defendants first argue Plaintiffs' fail to identify a claim for relief within the applicable limitations period. (Dkt. No. 19 at 8). A complaint can be dismissed if its allegations affirmatively show that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling. *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007) (stating that such a dismissal is appropriate pursuant to Rule 12(b)(6)). Sections 1981, 1983, and 1985 do not contain limitations periods. For claims under these sections, courts traditionally apply the relevant state personal injury limitations period. *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987); *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (finding that the plaintiff's § 1981 claim is subject to the state's prescriptive period for tort actions); *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (holding that the statute of limitation for a § 1983 claim is determined by the statute of limitations governing personal injury in the forum state). Texas has a two year statute of limitations for personal injury claims. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Helton*, 832 F.2d at 334. The Court, therefore, will apply Texas's two-year limitations period governing tort actions to Plaintiffs' §§ 1981, 1983, and 1985 claims.

Although state law controls the limitations period, federal law governs when a cause of action accrues. *Helton*, 832 F.2d at 334 (citing *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir.1980), *on rehearing*, 644 F.2d 1023 (5th Cir.1981)). "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Russell v. Board of Trustees*, 968 F.2d 489, 493 (5th Cir.1992) (quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir.1987)). Further, actual

knowledge by the plaintiff is not required so long as "the circumstances would lead a reasonable person to investigate further." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

Plaintiffs allege "the deprivation of zoning property right without due process of law occurred first in July of 2021, when the City issued a letter purporting to rezone the Plaintiffs' property[.]" (Dkt. No. 29 at 4). Plaintiffs filed their case on March 13, 2023. (Dkt. No. 1). Accordingly, as to Plaintiffs' contention that the opinion letter constitutes a zoning change, the action was filed within the limitations period.

However, Plaintiffs do not have standing to challenge the zoning changes which occurred 31 years prior to the commencement of this lawsuit. The Fifth Circuit held in *Russell* that the limitations period begins to run the moment a plaintiff "becomes aware" or has "sufficient information to know" that an injury occurred. *Russell*, 968 F.2d at 493. Plaintiffs purchased the Subject Property on August 7, 2020. (Dkt. No. 28 at 5). Giving Plaintiffs the most generous interpretation possible, the Court finds that Plaintiffs had "sufficient information to know" there were alleged irregularities with the adoption of the 1992 ordinance governing the Subject Property when they completed their purchase of the property on August 7, 2020. Therefore, challenges to the adoption of zoning ordinances in 1992 or 1984 are barred by the statute of limitations.

### C. Plaintiffs' claim for violation of due process under 42 U.S.C. § 1983

As explained above, Plaintiffs bring a claim against all Defendants for violations of 42 U.S.C. § 1983 and the 14th Amendment of the United States Constitution. (Dkt. No. 28 at 30). Specifically, Plaintiffs claim Defendants "have subjected, or caused to be subjected, the Plaintiffs to the deprivation of their rights, privileges, or immunities secured by the 14th Amendment to the United States Constitution, namely deprivation of their property rights without due process of law, both substantive and procedural." (*Id.*)

Defendants make various arguments about the inadequacy of Plaintiffs' due process claim. (Dkt. Nos. 49, 52, 54). Plaintiffs have failed, according to Defendants, to identify an action by any party to the case to change the zoning of the Subject Property. (Dkt. No. 52 at 6-7). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Similarly, substantive due process bars outright "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Critical to both procedural and substantive due process is the need for a party to allege a governmental action which deprives them of a life, liberty, or property interest. *See Brennan v. Stewart*, 834 F.2d 1248, 1256 (5th Cir.1988); *see also Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001).

Plaintiffs claim that their "zoning rights in the Subject Property" were violated when the City of Mission Planning Department, in conspiracy with the Individual Defendants, changed its zoning classification without any hearing. (Dkt. No. 28 at 30). As stated in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972):

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Since property interests are determined by state law, "the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976). The Court, thus, must conduct an inquiry into the relevant Texas law governing zoning to determine if Plaintiffs have stated a plausible claim for relief for violation of their Constitutional rights.

Plaintiffs originally claimed that the letters written in 2017 and 2021 by City employees describing the zoning designation of the subject property constitute an official change in the zoning of the property. (Dkt. No. 28 at 31). Plaintiffs fail, however, to cite the Court to any cases or other

legal authority supporting this contention in their briefings. It is well established law in Texas that zoning is a legislative function delegated to the municipalities. Tex. Loc. Gov't Code Ann. §§ 211.006-009 (West); *Thompson v. City of Palestine*, 510 S.W.2d 579, 581 (Tex. 1974). A zoning ordinance may only be changed through the authorized acts of city officials. *See City of Hutchins v. Prasifka*, 450 S.W.2d 829, 833 (Tex.1970). Thus, the question presented to the Court is whether a zoning opinion letter issued by a city employee is sufficient to change a property's zoning as an authorized act of a city official.

In *Prasifka*, the City Council of the City of Hutchins passed a resolution to change the zoning on a tract of land from residential to heavy manufacturing. *Id.* at 831. City administrative staff, erroneously believing the resolution constituted a zoning change, reclassified the Prafsifka's land on the official City Zoning Map to reflect the zoning change in the resolution. *Id.* Prasifka, in relying on the resolution and changes to the official map, moved some manufacturing items on to the property and began to pour foundation for a building. *Id.* at 834. However, because the resolution was not a proper means of changing the land use and the city never enacted a new zoning ordinance, the land remained officially zoned for residential use. *Id.* at 833. The Texas Supreme Court held that the city could not be estopped from enforcing its zoning laws based on the unauthorized alteration of the zoning map. *Id.* at 835–36. Further, the Court adopted the trial court's holding that "the City of Hutchins is not estopped from classifying the land as residential since the plaintiffs (Prasifkas) failed to properly investigate and determine the true classification of such tract." *Id.* at 835.

Although *Prasifka* deals with the question of estoppel rather than violations of the 14th Amendment, the Court finds the case instructive. Here, Plaintiff relies on two "opinion letters" issued by the City and a change to the "official zoning map" to argue that the city interfered with its property. (Dkt. No. 53 at 1-2). There is no indication from Plaintiffs' Complaint the City

Council or other municipal zoning authority took any other action regarding the Subject Property. (*See* Dkt. No. 28). As the Texas Supreme Court set out in *Prasifka*, only a valid act of a city council or appointed zoning authority can effectively change a property's zoning. *See Prasifka*, 450 S.W.2d 829. Further, even if a landowner relies on official city maps or statements, that is not sufficient to change a property's zoning. *Id.* Therefore, because Plaintiffs' only evidence that the City has taken any action to alter the zoning designation of the Subject Property is an opinion letter issued by the City of Mission Planning Department, the Court finds there has been no action by Defendants.

Indeed, Plaintiff states in its Supplemental Brief to the Court that they "agree. . . that the issuance of a zoning opinion letter or change in the official zoning map cannot constitute a change in zoning of Plaintiffs' property." (Dkt. No. 53 at 1). Defendants agree with this interpretation, contending there was no change in the zoning of Plaintiffs' property. (*See* Dkt. Nos. 52, 54). Therefore, the Court finds that the parties are in agreement: no action has been taken by any party involved in this lawsuit that changes the zoning of the Subject Property.[4]

Although there is dispute about the process used in 1992 to enact a zoning ordinance governing the Subject Property, the Court has concluded that any dispute about its validity is barred by the statute of limitations. Plaintiffs' Complaint relies solely on the zoning opinion letters to argue that their zoning rights in the Subject Property were violated without due process. Having concluded that the zoning opinion letters did not constitute a change in the zoning of the Subject Property[5], the Court finds the City, the HOA, and the Individual Defendants have taken no action with regard to the property to deprive Plaintiffs of procedural or substantive due process rights.

---

[4] The Court is aware of a lawsuit proceeding in the 275th District Court of Hidalgo County, Cause No. C-2228-21-E. The parties have only advised the Court that the lawsuit is ongoing, not the nature of the suit. The Court takes judicial notice that an element of the state court proceeding is request for declaratory judgment regarding the zoning of the Subject Property. However, this is not pled in the Complaint as a violation of Plaintiffs' constitutional right and, therefore, not considered by the Court.

[5] The Court is dismissing this claim without ruling on which interpretation of the 1992 ordinance controls.

Accordingly, Plaintiffs failed to show there are entitled to relief for violation of substantive and procedural due process.

**D. Plaintiffs' claim for violation of equal protection under 42 U.S.C. § 1983**

Although the Court finds it was not specifically pled, the parties argue the propriety of an equal protection claim in their briefings to the Court. Specifically, Plaintiffs allege that they have properly pled "facts sufficient to support a[] [class-of-one] equal protection claim." (Dkt. No. 29 at 8). Therefore, the Court will consider such a claim based on the arguments made in the briefings.

A "class of one" equal protection claim can be brought if "the plaintiff [shows] that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently. *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir.1999). Plaintiffs have alleged they were treated "differently from all other property owners in the City[] because the zoning rights were taken[.]" (Dkt. No. 29 at 9-10). However, as discussed above, this did not occur. The City took no official action regarding the zoning of Plaintiff's property. Further, Plaintiffs do not discuss how the issuance of a zoning opinion letter alone differentiates them from other property owners in the City. The Court agrees with Defendants that Plaintiffs fail to establish how they were treated differently. (Dkt. No. 19 at 15). Thus, the inquiry can end here, and Plaintiffs equal protection claim with respect to Defendants' actions fails. Accordingly, Plaintiffs claims for violation of substantive and procedural due process and equal protection brought pursuant to 42 U.S.C. § 1983 should be **DISMISSED** for failure to state a claim.

**E. Plaintiffs' claim for violation of 42 U.S.C. § 1981**

Plaintiffs bring a claim against all Defendants for violations of 42 U.S.C. § 1981. Plaintiffs argue Defendants have "impaired Plaintiff's right to make and enforce contracts, including the

making, performance, and modification of contractual and property rights arising from contractual rights, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." (Dkt. No. 28 at 32).

The Court notes at the outset of its analysis that Plaintiffs do not cite the Court to a single case which supports its theory that Defendants are liable under 42 U.S.C. § 1981 for alleged impairment of zoning rights. (*See* Dkt. No. 27, 29). Regardless, the Court will look to the statute and applicable case law to determine if Plaintiffs have stated an actionable claim for relief.

To state a claim for relief under § 1981 a plaintiff must allege "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Sherrod v. United Way Worldwide*, 821 F. App'x 311, 316 (5th Cir. 2020) (quoting *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994). 42 U.S.C. § 1981 protects an individual's right to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws[.]" Plaintiffs' sole allegation under § 1981 is "Defendants have unlawfully, but under the color of state and local laws, denied the Plaintiffs those rights and denied the Plaintiffs the full and equal benefit of the laws and proceedings needed for the use and modification of the property rights in the Subject Property[.]" (Dkt. No. 28 at 32-33). As clarified in their Response to the City's Motion to Dismiss, "[t]he contract right arises from the zoning rights which are a part of the right to the property[.]" (Dkt. No. 29 at 12).

Defendants attempt to put forth arguments about why Plaintiffs' claim is facially deficient, including failure to identify any interference with a contract, failure to identify the contract itself, and lack of intentional discrimination. (Dkt. No. 19 at 18-19). The Court and Plaintiffs agree with the first point raised by Defendants. In its supplemental briefing to the Court, Plaintiffs state they "do not have a viable federal cause of action" if the Court finds no actions taken by the Defendants

have changed the zoning of the Subject Property. (Dkt. No. 53 at 2). Having reached the conclusion that no action alleged in the Complaint effectuated a change in the zoning of Plaintiffs' property, the Court finds Plaintiffs' claim for violation of 42 U.S.C. § 1981 should be **DISMISSED** for failure to state a claim.

**F. Plaintiff's claim for conspiracy to interfere with civil rights under 42 U.S.C. §1985(3)**

Plaintiffs' First Amended Complaint alleges that the City conspired with the other named Defendants to deprive Plaintiffs of their property rights in the Subject Property in violation of 42 U.S.C. § 1985 (3). (Dkt. No. 28 at 33). To make out a claim under § 1985 (3), a plaintiff must allege: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). Further, Plaintiff must also allege that the deprivation of the equal protection of the laws it experienced was the result of "class-based animus." *Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994).

The Court has determined that Plaintiffs failed to state a claim for relief under Sections 1981 and 1983 because Defendants did not take any action to violate Plaintiffs' constitutional right to due process or equal protection. A Section 1985(3) claim requires Plaintiffs to allege "an overt act" which causes "injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard*, 30 F.3d at 352-53. Given the Court's previous findings that Plaintiff's Complaint does not allege Defendants took any action with respect to the zoning of the Subject Property nor did they violate Plaintiffs' constitutional rights, the Court finds Plaintiffs' claim for violation of 42 U.S.C. § 1985(3) should be **DISMISSED** for failure to state a claim.

**G. Plaintiff's claim for business disparagement**

Plaintiffs claim Defendants Salinas, Roth, Philips, Martinez, and Galik "disparaged Plaintiffs' business reputation" by publishing false statements which caused patrons to cancel their business. (Dkt. No. 28 at 35). Although Plaintiffs nominally plead a cause of action for business disparagement, the Supreme Court of Texas and federal courts interpreting Texas state law have analyzed business disparagement claims as both business disparagement and defamation claims. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766-67 (Tex. 1987); *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *8 (N.D. Tex. Dec. 29, 2015). Both torts involve the imposition of liability for the publication of false statements affecting the plaintiff to a third party which cause injury. *Hurlbut*, 749 S.W.2d at 766. If the claim is primarily concerned with personal or general damages—e.g., injury to reputation, humiliation, or mental anguish—then the cause of action is one for defamation. *Williamson v. New Times, Inc.*, 980 S.W.2d 706, 709-10 (Tex. App.—Fort Worth 1998, no pet.). Alternatively, "if the gravamen of the plaintiff's claim is for special damages (e.g., an economic injury to the plaintiff's business), rather than general damages to its reputation, then the proper cause of action may be for business disparagement." *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417-18 (Tex. 2020).

The difference between the two torts is best seen in their respective elements. To state a claim for business disparagement under Texas law, a plaintiff must show (1) publication by the defendant of the disparaging words about the plaintiff's business interest, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages. *Prudential Ins. Co. of America v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74 (Tex. 2000). Unlike a claim for defamation, business disparagement is "solely concerned with economic harm." *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020).

In contrast, defamation actions are chiefly concerned with protecting the general reputation of an injured party. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex.2003). The elements of defamation are (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Thus, the main points of difference between the two actions are falsity, fault, and damages. *Innovative Block of S. Texas, Ltd.,* 603 S.W.3d at 417 (citing RESTATEMENT (SECOND) OF TORTS § 623A cmt. G.).

### i.    Statute of Limitations

Defendants Salinas and Phillips assert Plaintiffs' claim for business disparagement is barred by the statute of limitations. (Dkt. Nos. 24, 36). The distinction between the two torts is meaningful in determining the limitations period which applies to Plaintiffs' cause of action. In Texas, slander and defamation actions are governed by a one-year limitations period. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a). Business disparagement actions are governed by a two-year limitations period when the injury alleged is direct pecuniary loss rather than a personal loss in reputation. *See id.* § 16.003(a); *Hurlbut*, 749 S.W.2d at 767 (treating business disparagement action as slander action governed by one-year statute of limitations because the plaintiff failed to prove pecuniary loss).

Defendants Salinas and Phillips first argue Plaintiffs failed to properly plead special damages. (Dkt. Nos. 24, 36). Therefore, according to Defendants Salinas and Phillips, Plaintiffs actually pled a defamation claim, which is governed by a one-year limitations period. (*Id.*). After Defendants filed their Motions to Dismiss, Plaintiffs amended their complaint to include specific allegations that Defendants conduct caused members of Plaintiffs' club to "cancel[] their membership because of the disparaging statements made by the defendants." (Dkt. No. 28 at 36).

The Court finds Defendants argument that the one-year limitations period should apply to be without merit. Plaintiffs claim focuses on the pecuniary loss suffered as a result of Defendants' allegedly false statements. *See Innovative Block of S. Texas, Ltd.,* 603 S.W.3d at 417. Therefore, the claim is properly treated as one for business disparagement, and the two-year limitations period applies.

Even if the two year limitations period applies, Defendants Salinas and Phillips argue that the disparaging statements were allegedly made in the Fall of 2020. (Dkts. No. 24, 36). Plaintiffs did not commence this lawsuit until March 13, 2023. (*Id.*). Therefore, Plaintiffs' claim is barred by the business disparagement two year limitations period. (*Id.*).

### i.    Ricardo Lee Salinas

Plaintiffs do not address Defendant Salinas' contention that the claim against him is barred by the statute of limitations. Relying on Plaintiffs' Complaint, the allegedly disparaging comments were made to Plaintiffs' staff on a recorded phone line on or about October 2020. (Dkt. No. 28 at 15). Given Plaintiffs failure to respond to Defendant's argument, the Court finds the statements in the phone call occurred more than two years before this lawsuit was filed. Thus, a claim based on these statements is barred by the statute of limitations and cannot serve as the basis of Plaintiffs' claim against Defendant Salinas. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a).

Plaintiffs' only other allegation against Defendant Salinas is that he "proceeded to make false statements about the Plaintiffs and their owners to members of the Club and encouraged them to terminate their membership at the Club." (Dkt. No. 28 at 16). While a claim for defamation or business disparagement is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), the pleadings must be sufficiently detailed to enable the defendant to respond. *Teel,* 2015 WL 9478187 at *4; *Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 958-59 (E.D. Tex. 2011). The pleading must specify the "time, place, content, speaker,

and listener." *Wiggins v. Dist. Cablevision, Inc.,* 853 F. Supp. 484, 494 (D.D.C. 1994); *Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir.2007) (affirming the requirement that the claim identify the speaker and the defamatory statement).

The Court finds Plaintiffs' assertion as to Defendant Salinas does not contain sufficient factual information to raise a right to relief on Plaintiffs' business disparagement claim. *See Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs' business disparagement claim against Defendant Salinas is **DISMISSED**.

**ii.    Joseph Felton Phillips**

Plaintiffs respond to Defendant Phillips' statute of limitations argument by pointing to its inclusion of allegedly disparaging statements made in a social media post by Defendant Phillips. (Dkt. No. 42 at 13). Although there is no date on the social media post, it is not evident on the face of Plaintiffs' Complaint that Defendant's Phillips' social media post was made outside of the limitations period. Further, the Court notes that Defendant Phillips does not discuss the post in his Motion to Dismiss. (Dkt. No. 36). Thus, the Court finds Defendant Phillips' statute of limitations argument to be without merit.

Defendant Phillips also makes multiple arguments as to why Plaintiffs have failed to plead an actionable business disparagement claim. First, Defendant argues Plaintiffs failed to "identify any statement by Phillips that was disparaging about Plaintiffs' business interests." (Dkt. No. 36 at 9). This argument ignores entirely the social media post included in Plaintiffs' Complaint which discusses "the Club" and the "new owners' ultimate plan [] to close all or part of the course and subdivide into more lots." (Dkt. No. 28 at 14). The statements include allegations Plaintiffs were operating parts of their business illegally and threating to report such activity to the police. Statements about the character of a plaintiff's business are sufficient to support a business disparagement claim. *Dwyer v. Sabine Min. Co.*, 890 S.W.2d 140, 143 (Tex.App.-Texarkana,

1994) (statement that a company was not trustworthy was enough to support a business disparagement claim). The Court finds Plaintiffs' Complaint properly alleged statements by Defendant about their economic interests.

Defendant goes on to argue that the social media post was not published to a third party, the statement that Plaintiffs were "from Mexico" is not disparaging, and Plaintiffs failed to plead special damages. Again, the same problem arises: the arguments do not seem to be based on Plaintiffs' Complaint. Although Plaintiffs allege Defendant Phillips was "ang[ry] at the new owners being of a Mexican background" (Dkt. No. 28 at 11), the Complaint never alleges Defendant Phillips said they were "from Mexico." The same is true with Defendant's argument that Plaintiffs failed to plead special damages. Quoting from Plaintiffs' complaint, "[t]he special damages include loss of members who canceled their membership because of the disparaging statement made by the defendants." (Dkt. No. 28 at 36). Setting aside whether or not this allegation is sufficient to state a plausible claim for relief, Plaintiffs clearly pled special damages. Accordingly, the Court finds Defendant Phillips's motion to dismiss Plaintiffs' business disparagement claim should be **DENIED**.

### iii. Carlos Martinez

Defendant Martinez argues first that Plaintiffs "fail to identify any statement by Martinez that was disparaging about Plaintiffs' business interests." (Dkt. No. 21 at 9). As noted above, statements about the character of a plaintiff's business are sufficient to support a business disparagement claim. *Dwyer*, 890 S.W.2d at 143. Plaintiffs allege that Defendant Martinez made false statements to third parties that Plaintiffs were "not the real owners of the Cimarron Country Club, but merely 'front men' for Mexican billionaire Carlos Slim[.]" (Dkt. No. 28 at 25). Further, Plaintiffs allege Defendant Martinez made false statements that Plaintiffs "are known for going

bankrupt[.]" (*Id.*) The Court finds these statements impugn the character of Plaintiffs' business and are sufficient to support a business disparagement claim.

Defendant Martinez next argues Plaintiffs failed to allege he acted with malice. (Dkt. No. 21 at 9). Malice is properly alleged if the Plaintiffs shows the "statements were made with knowledge of the falsity, with reckless disregard as to the statements' truth, or with ill will or an intent to interfere with the plaintiff's economic interest." *Fluor Enterprises, Inc. v. Conex Int'l. Corp.*, 273 S.W.3d 426, 438-39 (Tex. App.—Beaumont 2008, pet. denied). The Court, viewing the allegations in the light most favorable to Plaintiffs, finds the statements sufficient to show they were made with ill will or with reckless disregard as to the statements' truth. Defendant puts forth no basis for his claim Plaintiffs were front men for Carlos Slim. Accordingly, Defendant Martinez's motion to dismiss Plaintiffs' business disparagement claim should be **DENIED**.

### iv.    Richard Roth

Defendant Roth submitted a Motion to Dismiss along with Defendant Martinez in which he alleges Plaintiffs failed to identify facts to support a business disparagement claim. (Dkt. No. 21 at 8). The Motion, however, only references Plaintiffs' allegations against Defendant Martinez. Given no argument was made by Defendant Roth, the Court finds Defendant Roth's motion to dismiss Plaintiffs' business disparagement claim should be **DENIED**.

### v.    Susan Galik

Defendant Galik argues Plaintiffs' business disparagement claim is not actionable because her statement was not published to a third party. (Dkt. No. 22 at 7). To support its contention, Defendant cites the Court to *Graham Land and Cattle Co. v. Independent Bankers Bank*, 205 S.W.3d 21, 29 (Tex.App.-Corpus Christi, 2006). In *Graham Land and Cattle Co.*, the court found the defendant conceded in its brief that the statements at issue were published to a third party. *Id.* Here, Defendant is arguing that the statement made in her email was not published to a third party.

The Court fails to see how the law upon which Defendant relies supports her claim. Thus, the Court will not consider this argument. *See* Local Rule 7.1.

Defendant Galik also argues Plaintiff failed to allege she acted with malice. (Dkt. No. 22 at 8). Malice is properly alleged if a plaintiff shows the "statements were made with knowledge of the falsity, with reckless disregard as to the statements' truth, or with ill will or an intent to interfere with the plaintiff's economic interest." *Fluor Enterprises, Inc.*, 273 S.W.3d at 438-39. Plaintiffs' Complaint includes an allegation that Defendant Galik said, "I consider [Plaintiffs'] actions evil." (Dkt. No. 28 at 25). The Court finds the allegation sufficient to support an inference that Defendant Galik's statements were made with ill will.

Finally, Defendant Galik argues Plaintiffs' pleading does not "sufficiently provide nay details concerning the statement(s), such as the actual words used by Galik, the audience, the dates and time (or even approximate dates of the statement(s), [or] the factual setting(s) in which the statement(s) was made[.]" (Dkt. No. 22 at 7-8). However, this argument assumes the Court will not consider an email, the text of which is provided in the Complaint, as sufficient to support a business disparagement claim. Addressing only what was arguing, the Court finds the email shows to whom the statement was made, when, the exact language, and the "factual setting." (Dkt. No. 28 at 25). Accordingly, Ms. Galik's motion to dismiss Plaintiffs' business disparagement claim should be **DENIED**.

## H.  Plaintiff's claim for tortious interference

Defendants Salinas and Phillips argue Plaintiffs' claim of tortious interference is barred by the statute of limitations. Although Plaintiffs fail in their reply to address Defendants' argument, the omission is understandable: Defendants do nothing more than cite the Court to a case which holds that a two year limitations period governs tortious interference claims. Defendants do not discuss case law applying the limitations period to a tortious interference claim nor how the

limitations period conclusively disallows Plaintiffs' claim. The Court finds the argument does not comply with Local Rule 7.1. Accordingly, the Motion to Dismiss Plaintiffs' tortious interference claim should be **DENIED**.

### I.  Plaintiff's claim for trespass

Finally, Defendants Salinas and Phillips contend Plaintiffs have not identified any facts to support their claim of trespass. (Dkt. Nos. 24, 36). To make out a claim of trespass, a plaintiff must show "(1) entry (2) onto the property of another (3) without the property owner's consent or authorization." *Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015). Looking at the facts in the Complaint, the Court can find no allegation of Defendants Salinas or Phillips entering Plaintiffs' property. Further, Plaintiffs did not submit a response to Defendants argument to guide the Court. Accordingly, the Court finds Plaintiffs' claim of trespass against Defendants Salinas and Phillips should be **DISMISSED**.

### J.  Plaintiffs' claims against Homeowners' Association of Cimarron, Inc.

Plaintiffs bring causes of action against the HOA for tortious interference and trespass to property. Plaintiffs assert the HOA is liable for the Individual Defendants wrongful conduct "as its authorized agents [sic]". (Dkt. No. 40 at 15). Defendant argues Plaintiffs have not established vicarious liability under "(1) respondeat superior; (2) actual or apparent authority; and (3) ratification." (Dkt. No. 26 at 11). Plaintiff responds by claiming "the HOA authorized its members to act with authority on behalf of the HOA[.]. (Dkt. No. 40 at 15). Accordingly, the Court will consider only whether the Individual Defendants were acting as agents with the actual or apparent authority of the HOA.

"Both actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority)." *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 22 (Tex. App.—San Antonio 2006, pet. denied) (citing *Suarez*

*v. Jordan*, 35 S.W.3d 268, 272 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "Actual authority includes both express and implied authority and usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses." *Sociedad De Solaridad Social "El Estillero" v. J.S. McManus Produce Co.*, 964 S.W.2d 332, 334 (ex. App.—Corpus Christi–Edinburg 1998, no pet.). Apparent authority is established if a plaintiff shows: "(1) a reasonable belief in the agent's authority; (2) generated by some holding out or neglect of the principal; and (3) a justifiable reliance on the authority." *Protect Envtl. Services, Inc. v. Norco Corp.*, 403 S.W.3d 532, 541 (Tex. App.—El Paso 2013, pet. denied) (citing *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Defendant contends Plaintiffs failed to establish actual or apparent authority of the HOA over the Individual Defendants. The HOA argues "Plaintiffs' complaint fails to specifically plead the theories of actual or apparent authority, and it is devoid of any facts establishing the foregoing elements[.]" (Dkt. No. 26 at 12). Plaintiffs, however, point the Court to an allegation within the Complaint to support its claim against the HOA. Plaintiffs contend Defendant Fair "authorized all HOA members to act on behalf of the HOA. . . to stop Plaintiffs from enjoying and exercising their property rights." (Dkt. No. 40 at 15). Looking directly to the Complaint, Plaintiffs allege Mr. Fair told HOA members "they should take any action they could on behalf of the HOA to. . . deprive the Plaintiffs of any zoning righs they may possess to develop or use the Subject Property for any use other than as a golf course[.]" (Dkt. No. 28 at 17). Defendant's contention that Plaintiffs' Complaint is "devoid of any facts" alleging actual or apparent authority ignores multiple paragraphs discussing the HOA's grant of authority to its members. Accordingly, it is possible, in viewing the Complaint in the light most favorable to Plaintiffs, that these statements imbued the Individual Defendants with express authority to interfere with Plaintiffs' business or trespass on

Plaintiffs' property as agents of the HOA. For this reason, the Court finds the HOA's Motion Dismiss Plaintiffs' tortious interference and trespass should be **DENIED**.

## V.   Holding

For the foregoing reasons, the Court **GRANTS** Defendants' 12(b)(6) Motions to Dismiss as to Plaintiffs' claims under 42 U.S.C. §§ 1981, 1983, and 1985. Accordingly, it is **ORDERED** that such claims are **DISMISSED** against all Defendants.

Further, the Court **GRANTS** Defendants' Motions to Dismiss as to Plaintiffs' business disparagement claims against Ricardo Lee Salinas. The Court **DENIES** Defendants' Motions to Dismiss as to Plaintiffs' business disparagement claims against Richard Roth, Carlos Martinez, Susan Galik, and Joseph Felton Phillips.

Further, the Court **DENIES** Defendants Ricardo Lee Salinas, Joseph Felton Phillips, and Homeowners' Association of Cimarron, Inc.'s Motions to Dismiss Plaintiffs' tortious interference claim.

Further, the Court **GRANTS** Defendants Ricardo Lee Salinas, Joseph Felton Phillips' Motions to Dismiss Plaintiffs' trespass claim. The Court DENIES Homeowners' Association of Cimarron, Inc.'s Motion to Dismiss Plaintiffs' trespass claim.

It is **ORDERED** that Defendant the City of Mission, Texas is hereby **DISMISSED** from this lawsuit as Plaintiffs have no remaining claims left against it.

SO ORDERED March 28, 2024, at McAllen, Texas.

Randy Crane
Chief United States District Judge